**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Media DVX Property Services, Inc.,
a Delaware Corporation,

Plaintiff,

v.

Tektronix, Inc., an Oregon Corporation,

Defendant.

Civil No. 00-1504 RHK/JMM
**MEMORANDUM OPINION AND ORDER**

---

Daniel Q. Poretti and John J. Wackman, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, Minnesota, for Plaintiff.

Kim M. Schmid and C. Paul Carver, Bowman and Brooke, LLP, Minneapolis, Minnesota, and Randolph C. Foster and Richard J. Vangelisti, Stoel Rives, LLP, Portland, Oregon for Defendant.

---

## INTRODUCTION

Media DVX Property Services, Inc. ("Media") brought this lawsuit against Tektronix, Inc. ("Tektronix"), alleging breach of a Sales Agreement. Media asserts that Tektronix breached the Sales Agreement by providing deficient hardware and software. After notifying Tektronix of the problem, Media terminated the Sales Agreement. The parties attempted to negotiate on a mutually agreeable forum to resolve their dispute over performance of the contract. When the negotiations failed, Media commenced this suit in



FILED SEP 12 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Minnesota.

Before the Court is Defendant Tektronix's Motion to dismiss for improper venue under Rule 12(b)(3) or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1406(a). Tektronix argues that venue in Minnesota is improper because it violates the forum selection clause in the Sales Agreement. For the reasons set forth below, the Court will deny the Motion.

## BACKGROUND

Media is a Delaware corporation with its principal place of business in New York. (Compl. ¶ 2.) Media holds and manages all of the physical property used by its parent corporation, Media DVX, Inc. (hereinafter, "the parent corporation"). (Id.) The parent corporation provides television stations with technology that allows them to receive advertising digitally (as opposed to by video tape). (Compl. ¶ 8.) In October of 1999, Media entered into a Sales Agreement with Tektronix pursuant to which Tektronix agreed to develop and sell to Media some of the hardware and software to be used by Media and its customers. (Decl. Foster Ex. A at 5 (Sales Agreement).) Tektronix is an Oregon corporation with its principal place of business in Oregon. (Id. ¶ 3.)

Tektronix sent prototype hardware and software to Media's facility in Arden Hills, Minnesota. (Id. ¶ 10.) Media tested the products and noticed several performance problems. (Id. at 11.) Furthermore, Tektronix had designed its software in such a way that it used all of the processing resources of the computer on which it was being run,

despite Media's requirement that the software not do so. (Id. ¶ 12.) Media informed Tektronix of the problems with the software and hardware that had been supplied. (Id. ¶ 13.) Media subsequently gave Tektronix thirty days to cure the defects. (Id. ¶ 14.) When Tektronix did not cure the defects, Media terminated the contract on February 29, 2000. (Id.) Tektronix claims that it is still owed money under the Sales Agreement. (Joint Rule 26(f) Report at 2.)

Following termination of the Agreement, the parties tried to agree on a procedure for resolving their dispute. The Sales Agreement contains a forum selection clause that states " . . . any litigation arising under this Agreement shall be brought in a mutually agreed upon third party state." (Compl. Ex. A ¶ 21.) The parties disagree about the nature of the negotiations for determining a forum to litigate this matter. According to the evidence submitted to the Court, Media first proposed binding arbitration in a "mutually-agreeable location other than Portland, Oregon." (Shriver Aff. Ex. 3 (Letter from England to counsel for Tektronix, not dated).) Tektronix responded with the offer that the parties engage in expedited litigation in federal district court in Oregon or, if that option was unacceptable, that the parties agree to litigate in Washington state as a "third party state." (Foster Decl. Ex. B. (Letter from Foster to Counsel for Media, May 8, 2000).)

Media countered with a proposal that the parties mediate their dispute. (Poretti Aff. ¶ 2.) Proposed sites for the mediation included Chicago, Minneapolis, and Denver. (Id.) Media, through its counsel, stated that Oregon was an improper site for litigation

and that they would not agree to litigate in Washington. (Id. ¶ 3-4.) According to counsel for Media, Media proposed litigating this matter in Minnesota because it may be the only state with a connection to the litigation which is not excluded by the contract. (Id. ¶ 5.) Tektronix disagrees, stating that the only forum issue Media was willing to discuss related to mediation, not litigation. (Foster Second Decl. ¶ 5.) Media's counsel also asserts that Tektronix's counsel "made it clear that the only locations for mediation or litigation that his client would accept were Washington or Oregon . . . ." (Poretti Aff. ¶ 6 (emphasis added).)

Media filed suit in this Court on June 20, 2000. The Complaint asserts one cause of action: breach of the Sales Agreement. (Compl. ¶ 1.) In lieu of an Answer, Tektronix has moved to dismiss the Complaint for improper venue or, in the alternative, to transfer venue to the United States District Court for the District of Oregon. As a third alternative, Tektronix requests an order directing the parties to engage in good faith negotiations to agree upon a third party state to which the Court could transfer the case. (Def.'s Supp. Mem. at 8.)

## ANALYSIS

### I. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) or in the Alternative Transfer Pursuant to 28 U.S.C. § 1406(a)

In its Motion, Tektronix has invoked both Rule 12(b)(3) and 28 U.S.C. § 1406(a). A motion to dismiss pursuant to Rule 12(b)(3) and motion for relief pursuant to § 1406(a)

are both triggered by the same defect: improper venue. Rule 12(b)(3) provides for dismissal based upon "improper venue." Section 1406(a) states that "a district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).[1]

**A. Burden of Proof**

Generally, the party invoking § 1406(a) has the burden of proving that venue does not lie in the present district and, where a transfer is sought, that the proposed transferee court has jurisdiction to hear the case. See United States v Orshek, 164 F.2d 741, 742 (8th Cir. 1947) (holding that the burden of proving improper venue was on the movant); see also Naegler v. Nissan Motor Co., 835 F. Supp. 1152, 1158 (W.D. Mo. 1993) (finding that the movant could not demonstrate that the proposed transferee court had jurisdiction). Tektronix argues, however, that the burden of persuasion should shift to Media to show that the forum selection clause should not be enforced. (Def. Supp. Mem. at 5 (citing Kline v. Kawai Am. Corp., 498 F. Supp. 868, 871 (D. Minn. 1980) (MacLaughlin, J.)). However, the typical case in which the burden of proof shifts to the party opposing a

---

[1]The only difference between Rule 12(b)(3) and § 1406(a) is that the former specifically provides that the defendant may bring a motion to dismiss for improper venue. See National Micrographics Sys. v. Canon U.S.A., Inc., 825 F. Supp. 671, 679 n.14 (D.N.J. 1993) (noting that it is really a distinction without a difference between the Rule and the Statute). Because both Rule 12(b)(3) and § 1406(a) require a finding of improper venue as a prerequisite for deciding whether to dismiss or transfer the case, the Court will analyze this Motion under § 1406(a).

§ 1406(a) motion involves a forum selection clause that expressly dictates the jurisdiction in which suit may be brought and the plaintiff has filed elsewhere. A forum selection clause, generally, provides for a specific forum, such as a state or federal court, where a dispute may be brought. 17 Moore, Moore's Federal Practice § 111.04(1) (Matthew Bender 3d ed.) In the instant case, the clause does not dictate a jurisdiction; rather, the parties are required to negotiate for, and mutually agree upon, a venue.[2] Because the Plaintiff here did not file suit in a jurisdiction expressly prohibited by the forum selection clause, the burden should not shift to Media but rather should remain with Tektronix.

**B. Impact of Forum Selection Clause**

In determining the applicability and validity of a forum selection clause the federal court applies federal law. See Knutson v. Rexair, Inc., 749 F. Supp. 214, 215 (D. Minn. 1990) (Devitt, J.). Media has not challenged the validity of the forum selection clause. Accordingly, the Court will apply the clause to the circumstances of this case.

Assuming a valid forum selection clause, the next issue under § 1406(a) is whether the forum selection clause renders venue improper in Minnesota. Although the Eighth Circuit has not expressly addressed whether the violation of a valid forum selection

---

[2] Paragraph 21 of the Sales Agreement provides as follows:

> Governing Law. The rights of the parties hereunder shall be governed by the laws of the State of Oregon, and any litigation arising under this Agreement shall be brought in a mutually agreed upon third party state.

(Decl. Foster Ex. A at 5 (Sales Agreement).)

clause can cause venue to be improper under § 1406(a), other federal courts have found that such a violation causes venue to be improper. See Hoffman v. Burroughs Corp., 571 F. Supp. 545, 551 (N.D. Tex. 1982) (finding that venue was improper because the plaintiff's choice of venue violated the forum selection clause).[3] Consequently, even a plaintiff who meets the statutory requirements of venue under 28 U.S.C. § 1391(a) may still be subject to a dismissal or transfer if the chosen venue violates a valid forum selection clause in the parties' contract.[4]

The parties dispute the meaning of "third party state" in the forum selection clause, and whether there was a good faith effort by Media to negotiate for a mutually agreeable forum. The Court begins with the requirement that the forum be "mutually agreed upon."

**1. Negotiations for a Forum**

Tektronix argues that Media failed to negotiate in good faith on a forum for litigation. The forum selection clause does not explicitly require that the parties negotiate in good faith. Under Oregon law, however, every contract includes an implied duty to

---

[3] Because there is a strong federal policy favoring the enforcement of forum selection clauses, a Plaintiff's choice of forum that violates a valid selection clause is usually considered improper. See Carnival Cruise Lines v. Schute, 499 U.S. 585, 591-94, 111 S. Ct. 1522, 1526-28 (1991); Scherk v. Alberto-Culver Co., 417 U.S. 506, 517-520, 94 S. Ct. 2449, 2456-57 (1974), reh. denied, 419 U.S. 885, 95 S. Ct. 157 (1974); M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 14-17, 92 S. Ct. 1907, 1915-17 (1972).

[4] In the instant case, venue is proper under § 1391(a) as "a substantial part of the events or omissions giving rise to the claim" occurred in Minnesota. 28 U.S.C. § 1391(a)(2) (Compl. ¶ 7.) For example, Tektronix shipped the products in question to Media's Minnesota facilities. (Compl. ¶ 7.)

negotiate in good faith. See Uptown Heights Ass'n Ltd. Partnership v. Seafirst Corp., 891 P.2d 639, 643 (Or. 1995) (reiterating that there is an implied duty of good faith in all contracts). Tektronix's argument that Media did not negotiate in good faith is not borne out by the evidence before the Court. Both parties, at a minimum, made their positions clear regarding a proper forum for litigation (Tektronix stating its preference for Oregon or Washington and Media indicating that only Minnesota was proper). Through discussions between counsel, the parties' objections to the other's preferred forum were made clear. The fact that the parties were unable to agree is not surprising. The Court finds that Media made a good faith effort to negotiate a forum for litigating this matter. The remaining question then, is whether Minnesota as a forum violates the forum selection clause.

### 2. Minnesota as a Valid Forum

The forum selection clause expressly calls for litigation in a "third party state." (Decl. Foster Ex. A at 5 (Sales Agreement).) Tektronix argues that Minnesota cannot be a "third party state" because that is where Media transacted business with Tektronix. (Def.'s Supp. Mem. at 6.) To arrive at its proposed meaning of "third party state," however, Tektronix asks the Court to consider evidence outside the four corners of the contract. This evidence includes (1) information from the website of Media's parent corporation, introduced to establish that Media has an office in Minnesota, and (2) allegations from the Complaint regarding where Tektronix performed the contract.

(Second Decl. of Foster Ex. E at 1.) Considering only the four corners of the contract, however, the Court finds that the clause is not reasonably susceptible to Tektronix's interpretation and is, in fact, unambiguous.

The Sales Agreement provides that the rights of the parties are to be governed by Oregon law. (Decl. Foster Ex. A at 5 (Sales Agreement ¶ 21).) Under Oregon contract law, the court follows three steps in determining the meaning of a disputed contract provision. See Yogman v. Parrott, 937 P.2d 1019, 1020 (Or. 1997) (en banc). First, the court examines the disputed provision in the context of the four corners of the document to determine whether it is ambiguous. Id. If the court finds that the provision is ambiguous, the court may look beyond the four corners of the document to determine its meaning. Id. at 1022. If the first two steps do not resolve the ambiguity, the court may then rely on appropriate canons of construction. Id.

Media has confined its contract interpretation argument to the four corners of the contract, asserting that "third party state" means any state other than those identified in the Agreement: Oregon (where Tektronix is incorporated and has its principal place of business); Delaware (where Media is incorporated); and New York (where Media has its principal place of business). (Decl. Foster Ex. A at 5 (Sales Agreement).) The Court agrees that Media's interpretation of the phrase "third party state" is reasonable, and further finds that it is the only reasonable meaning.

Based on the Sales Agreement, the Court concludes that the parties intended, at the

time they entered into the Agreement, to exclude the states of their corporate headquarters and their principal places of business as fora for litigation. Because there is no mention of Minnesota in the Sales Agreement, and because the Court finds that the meaning of third party state is not ambiguous when interpreted in context of the Sales Agreement, the Court finds that Minnesota is a proper third party state under the forum selection clause.

**CONCLUSION**

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that:

1) Defendant Tektronix's Motion to Dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) (Doc. No. 5) is **DENIED**.

2) Defendant Tektronix's Motion to Transfer venue pursuant to 28 U.S.C. § 1406(a) (Doc. No. 5) is **DENIED.**

Dated: September 12, 2000

Richard H. Kyle
United States District Judge